UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID P. BROWN,<br><br>    Plaintiff,<br><br>  v.<br><br>JEANNE WOODFORD, et al.,<br><br>    Defendants. | No. C 05-2937 SI (pr)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff, a prisoner at Deuel Vocational Institute, filed this pro se civil rights action under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA). Plaintiff's amended complaint named as defendants Jeanne Woodford in her official capacity as the director of the California Department of Corrections and Rehabilitation (CDCR), and J. Brown in her official capacity as the warden of San Quentin State Prison. Only defendant Woodford was served with process.

Plaintiff sought damages for his claim that he was denied a requested accommodation (i.e., custom-fitted shoes) for his bilateral club feet so that he could participate in prison programs and activities. Defendant has moved for summary judgment on the ground that there is no triable issue of material fact as to whether defendant was deliberately indifferent to plaintiff's request for accommodation. Plaintiff has filed an opposition. For the reasons discussed below, the motion for summary judgment will be granted.

**BACKGROUND**

The following facts are undisputed unless otherwise noted:

The allegations in plaintiff's amended complaint concern the response to his foot problems between September 2004 and February 2005, when he was in the custody and care of CDCR in San Quentin. During that time, plaintiff, who suffers from bilateral club feet and hammertoes, received medical treatment on several occasions from Don M. Griffith, DPM, San Quentin's contract podiatrist.

Plaintiff has been in and out of various California state prisons for at least a decade, and has received orthopaedic shoes at various points while an inmate in both San Quentin and California State Prison, Solano. During his prior incarcerations in San Quentin plaintiff also received orthotics, which are molded pieces of rubber, leather, metal, plastic or other synthetic material inserted into a shoe to balance the foot in a neutral position and cushion the foot from excessive pounding. Even with the orthopaedic shoes and orthotics, plaintiff repeatedly sought medical care from San Quentin's podiatrist. For example, during February 2002 and May 2002, plaintiff scheduled twelve appointments with Dr. Griffith, although he only showed up on four occasions.

Plaintiff was received in San Quentin on September 1, 2004 following a parole violation. Shortly thereafter he was given a referral for an examination by a podiatrist. Dr. Griffith examined plaintiff on October 13, 2004, and gave plaintiff Mediplast pads for the calluses on plaintiff's feet. During a follow-up examination on November 10, 2004, Dr. Griffith determined that neither orthotics nor orthopaedic shoes would reduce the severity of the calluses on plaintiff's feet or the pain that he experienced when attempting to ambulate. Dr. Griffith concluded the only way to treat plaintiff's condition was through surgery. The surgery would have likely enabled plaintiff to ambulate more comfortably, but he probably would have to be assigned to a sedentary job at the prison following the surgery, and his degenerative arthritis in his hip would have limited his ability to stand and engage in prison activities. The surgery could have been performed within 30-60 days. Plaintiff initially agreed to the surgery, and a "Request

2

for Services" in regards to the surgery was submitted by Dr. Griffith on November 10, 2004.

On November 18, 2004, plaintiff submitted a "reasonable modification or accommodation request" to obtain a pair of custom fitted shoes. Plaintiff's request was partially granted on December 8, 2004. The first-level reviewer was Dr. G.A. Wilson, a San Quentin staff physician and surgeon. In his decision, Dr. Wilson recommended that plaintiff be limited to sedentary duty only, and that plaintiff avoid prolonged walking more than 100 yards, or standing more than 10-15 minutes. Wilson concluded that special shoes were not needed because continuing podiatry care and the accommodations in plaintiff's work duty would remedy plaintiff's concerns. Dr. Wilson also stated that he had interviewed and evaluated plaintiff on December 2, 2004. Plaintiff contends that this evaluation consisted of a 5-minute talk in a San Quentin prison yard, and that Dr. Wilson did not actually examine plaintiff's feet.

Because Dr. Wilson was plaintiff's primary care physician, he was also responsible for giving plaintiff a physical examination prior to surgery. Coincidentally, plaintiff's physical examination was scheduled for December 8, 2004, the same day Dr. Wilson authored his decision. The physical examination never took place because plaintiff became upset and left the office after being told that Dr. Wilson would eventually see him. As a result, surgery was not scheduled to take place until February 25, 2005. By that time, plaintiff had been paroled, and the surgery was not performed.

Meanwhile, on December 14, 2004, plaintiff appealed the first level review decision, again stating that he was experiencing severe pain in his feet and requesting that he receive special shoes. The appeal was denied on January 7, 2005. The second level reviewer noted that custom fitted shoes were not needed because Dr. Griffith had concluded that surgery was medically necessary to correct plaintiff's condition and restore normal function to his feet.

On January 13, 2005, plaintiff appealed to the third, or director's level of review. The appeal was denied. The third-level reviewer reiterated that the podiatrist had recommended surgery for treatment of plaintiff's feet, and that shoes were not needed. Having exhausted his administrative appeals, plaintiff filed the present action.

**VENUE AND JURISDICTION**

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred at San Quentin State Prison in Marin County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 12132. See 28 U.S.C. § 1331.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When there are cross-motions pending, the court looks at all the evidence submitted in support of, and in opposition to, both motions in ruling on each motion. See Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001).

Generally, when a party challenges the merits of the opponent's claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Although neither the amended complaint nor the opposition were verified, the original complaint was and therefore only it may be considered as evidence in deciding the pending motion.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

## DISCUSSION

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.§ 12101 et seq. (ADA), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

To state a claim under Title II of the ADA, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).

Although section 12132 does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. Weinreich v. Los Angeles County MTA, 114 F.3d 976, 979 (9th Cir.), cert. denied, 522 U.S. 971 (1997). A plaintiff accordingly bears the burden of establishing the existence of specific reasonable accommodations that the defendant public entity failed to provide. See id. at 978.

Damages are not available under Title II of the ADA absent a showing of discriminatory intent. See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. Id. at 1139.

Defendant does not dispute that plaintiff was denied a requested accommodation on the basis of his disability. Instead, defendant points to the absence of evidence that prison officials acted with deliberate indifference in denying the requested accommodation. The court agrees.

To satisfy the first prong of deliberate indifference, a plaintiff must identify a specific, reasonable and necessary accommodation that the public entity has failed to provide, and that the plaintiff notified the public entity of the need for accommodation. Duvall, 260 F.3d at 1138. In his November 18, 2004 request for a "reasonable modification or accommodation" plaintiff stated that orthopaedic shoes were necessary to enable him to walk with the "least amount of pain," and that the shoes would allow him to "participate in all activities." Without the shoes, it was difficult for plaintiff to walk more than 100 yards, as well as perform his job in the prison

6

cafeteria, which required that he spend more than five hours on his feet. From this, a reasonable trier of fact could find that plaintiff notified prison authorities of a specific, reasonable and necessary accommodation.

The second prong of deliberate indifference, however, requires a showing that the entity deliberately failed to fulfill its duty to act in response to the request for accommodation. Duvall, 260 F.3d at 1139-40. To raise a triable issue of material fact on this point, plaintiff must present evidence that the defendant failed to undertake a fact-specific investigation, gathering from plaintiff and qualified experts sufficient information to determine what constituted a reasonable accommodation. Id. In conducting any such investigation, defendant was required to give "primary consideration" to plaintiff's requests. Id.

On December 8, 2004, plaintiff's request for shoes was denied. Dr. Wilson, the first-level reviewer, proposed instead that plaintiff's work status be restricted to sedentary activities and that he not walk more than 100 yards or stand more than 15 minutes at a time. Dr. Wilson further advised plaintiff not to work on jobs involving ladders or scaffolding for six months. The rationale for denying the request for shoes was that the work accommodations, coupled with ongoing podiatry care, would remedy plaintiff's concerns. Dr. Wilson did not make any reference to Dr. Griffith's determination a month earlier that orthopaedic treatments were ineffective, and that plaintiff needed surgery to restore normal function to his feet.

The second level of review, however, expressly relied on Dr. Griffith's diagnosis to justify denying plaintiff's requested accommodation. The decision referred to plaintiff's multiple evaluations by Dr. Griffith, as well as Dr. Griffith's determination that surgery was the only way to "correct/restore normal function" in plaintiff's feet. Plaintiff's Exh. 8. The second level of review observed that "the appeal process cannot dictate what a physician prescribes. The physician makes the determination as to what is medically necessary based on medical examination and clinical lab reports and/or x-rays." The third level of review reiterated that the podiatrist had recommended surgery, and that CDRC would only provide medical services "which are based on medical necessity." Plaintiff's Exh.10.

7

In the present action, defendant similarly argues that the decision to deny plaintiff's requested accommodation was supported by thorough factual investigation of plaintiff's medical needs. Plaintiff was examined by Dr. Griffith on at least three occasions between June and December 2004. In addition, he was given physical exams by San Quentin medical staff. The medical consensus was that there was no effective way to correct plaintiff's condition other than surgery. Given this medical diagnosis and plaintiff's lengthy history of chronic pain related to his clubfeet, prison officials reasonably concluded that surgery would enable plaintiff to more fully participate in the prison's programs and activities than orthopaedic shoes. Although the surgery did not take place before plaintiff was paroled, that was because plaintiff refused to undergo the mandatory physical examination, and not due to any fault on the part of prison officials. In the meantime, plaintiff was treated periodically by the prison doctors, and received treatment for his calluses.

Plaintiff argues that orthopaedic shoes enable him to walk with minimum discomfort, but he has never presented any evidence that orthopaedic shoes or orthotics are more effective than surgery. Plaintiff also has not disputed defendant's evidence that, even when he had orthotics or orthopaedic shoes, he had pain in his feet. Viewing the facts in the light most favorable to plaintiff, the most that can be said is that plaintiff would prefer to receive orthopaedic shoes rather than undergo surgery. But plaintiff's personal disagreement with the diagnoses made by the San Quentin doctors is insufficient to establish deliberate indifference, especially since the factual investigation conducted by defendant revealed that his shoe request would not solve the foot pain problem.

Indeed, although plaintiff was given orthopaedic shoes in July 2005 while incarcerated at Deuel Vocational Institution, he was soon complaining of "pain in both feet" and required podiatric care. In December 2005, he underwent two more treatments by the prison podiatrist after reporting chronic pain in his feet. As with Dr. Griffith, the prison podiatrist at DVI recommended surgery, but plaintiff's parole date intervened. The undisputed evidence shows that plaintiff required surgery, and in denying plaintiff's request for shoes, San Quentin prison

officials were acting with plaintiff's best interests in mind. The denial of the requested accommodation did not amount to negligence, let alone deliberate indifference. See Duvall, 260 F.3d at 1139-40 (failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness).

There is no genuine issue of material fact as to whether prison officials were deliberately indifferent to plaintiff's requested accommodation. The undisputed evidence in the record shows that the final decision to deny the orthopaedic shoes was made after prison officials conducted a factual investigation into the nature of plaintiff's disability. Prison officials determined that orthopaedic shoes were not a reasonable accommodation, because they would not have relieved plaintiff's pain and discomfort in attempting to ambulate. Accordingly, defendant's motion for summary judgment on plaintiff's Title II ADA claim is granted. Because there is no genuine issue of fact as to whether the defendant was deliberately indifferent to plaintiff's requested accommodation, this court need not address defendant's alternative argument that she is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is hereby GRANTED. (Docket # 32.) Although defendant CDCR director Woodford was served with process, service of process was not accomplished on defendant warden Brown. However, their liability (or lack thereof) depends on the same facts, and the determination that plaintiff has failed to raise a triable issue of fact on his ADA claim means that both defendants are entitled to judgment in their favor.

Plaintiff's motion for an extension of time to file his opposition to the motion for summary judgment is GRANTED. (Docket # 36.) The opposition brief filed on August 17, 2007 is deemed timely filed. Plaintiff's motion for appointment of counsel, filed after the summary judgment motion was fully briefed, is DENIED for the same reasons stated in the

1  court's May 31, 2006 order denying his first motion for appointment of counsel.  (Docket # 40.)

2  The clerk shall close the file.

3  IT IS SO ORDERED.

4

5  Dated: November 20, 2007                                            _____
                                                                                        SUSAN ILLSTON
6                                                                                 United States District Judge